# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO 3:17-CV-784-JRW-CHL

**PATRICK PIZZELLA,** Secretary of Labor                                    **Plaintiff,**
*United States Department of Labor*

**v.**

**ANTHONY C. ALLEN, et al.,**                                              **Defendant.**

## <u>REPORT & RECOMMENDATION</u>

Before the Court is a motion for summary judgment filed by Defendants Anthony C. Allen, Mark N. Cain, Brian A. Lutes, James M. Staron, Linda A. Wilson, Norman E. Zelesky (collectively, "the Individual Defendants"), the Sypris Solutions 401(k) Merged Retirement Savings Plan ("the Merged Plan"), and Sypris Solutions Inc. ("Sypris"). (DN 47.) All defendants shall collectively be referred to as, "Defendants." A response was filed by Plaintiff Patrick Pizzella, Acting Secretary of Labor, United States Department of Labor ("Secretary" or "Plaintiff")[1]. (DN 50.) Plaintiff incorporates his motion for partial summary judgment into his response to Defendants' motion for summary judgment. (DN 50 at PageID # 2365.)  Defendants subsequently filed their reply. (DN 55.)

Also before the Court is Plaintiff's motion for partial summary judgment against Defendants Wilson and Sypris for breaching their fiduciary duties under 29 USC §1104(a)(1)(A) and (D), and for engaging in prohibited transactions under 29 USC §1106(a)(1)(D). (DN 46.) Defendants filed a response to Plaintiff's motion for partial summary judgment (DN 49) and incorporate

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Patrick Pizzella is substituted *sub nom.* for former Secretary of Labor R. Alexander Acosta.

their Motion for Summary Judgment into their response. (DN 49, at PageID #2338.) Plaintiff subsequently filed a reply. (DN 54).

The motions were referred to the undersigned pursuant to 28 USC §636(b)(1)(B) for proposed findings of fact and recommendation for disposition. (DN 58.) Accordingly, the motions are ripe for review and all arguments will be addressed together below.

## I.      LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Stated differently, summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of its case. *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the party moving for summary judgment establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party who must thereafter produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986); *accord Allstate Ins. Co. v. Coffey*, 796 F. Supp. 1017, 1018 (E.D. Ky. 1992). The non-moving party must "produce evidence that results in a conflict of material fact to be solved by a jury." C*ox v. Ky. Dep't of Transp*., 53 F.3d 146, 149 (6th Cir. 1995). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; rather, there must be sufficient evidence upon which a jury could reasonably find for the nonmoving party. *Id*. at

251.  Further, if the evidence presented is "merely colorable" and not "significantly probative," the Court may decide the legal issue and grant summary judgment.  *Id*. at 249.

## II.      DISCUSSION

A.  <u>Arguments</u>

Plaintiff argues that from January 1, 2012 through December 31, 2015, Defendants breached their fiduciary duties and engaged in prohibited transactions when they used plan assets in a manner contrary to the plan documents of four 401(k) plans sponsored by Sypris and in a manner that financially benefitted Sypris. (DN 46-1, at PageID # 313.) Specifically, Plaintiff alleges that Defendants used plan assets in the forfeiture account to reduce the amount Sypris had to pay towards its declared employer matching contribution, instead of using these plan assets to pay expenses of the 401(k) plans.  (DN 46-1, at PageID # 314; DN 46-3, at PageID # 344, ¶11-12; DN 46-14 at 130:13-25.)  Plaintiff alleges that from 2012 to 2015, plan expenses were paid by the plans by directly reducing the balances of the participants' individual plan accounts.  (*Id.*)

Plaintiff argues that the total amount of plan expenses that should have been paid through the plans' forfeiture account amounts to $464,194.68.  (DN 46-1, at PageID # 337.)  Plaintiff argues that pre-judgment interest based on the plans' Form 5500 rate of return compounded daily amounts to lost opportunity costs of $222,056.77.  (*Id*.)

Defendants contend that the use of plan forfeitures toward matching contributions was permissible under its reasonable interpretation of ambiguous and/or conflicting provisions in the four 401(k) plans.  (DN 47, at PageID #938.)  Defendants state that Sypris served as the Plan Administrator for the four 401(k) plans sponsored by Sypris within the meaning of ERISA §3(16), 29 U.S.C. §1002(16)(A) and that the Defined Contribution Volume Submitter Plan and Trust Basic

Plan Document 2008 ("Basic Plan" or "Basic Plan Documents") provided for the Plan Administrator's discretion to interpret the plan provisions. (*Id.*)

B. Statement of Facts

Between January 1, 2012 and December 31, 2015, Sypris sponsored four separate retirement plans: the Sypris Solutions 401(k) Retirement Savings Plan ("Solutions Plan"); the Sypris Electronics, LLC Hourly Employees' Retirement Savings Plan ("Electronics Plan"); the Sypris Technologies Hourly Employees' Retirement Savings Plan ("Technologies Plan"); and the Sypris Technologies Kenton Retirement Savings Plan ("Kenton Plan") (collectively, "the Four Plans"). (DN 42, at PageID #256.)  Each plan had its own Adoption Agreement.  (DN 47-7 to 47-10.) These plans were later merged effective March 1, 2016 to form the Merged Plan.[2] (DN 47, at PageID #938, fn 1.)

A forfeiture account consists of contributions paid by the employer to the 401(k) on behalf of an employee ("employer contributions") that are forfeited when the employee leaves the plan prior to the plan's vesting schedule.  (DN 46-17, at 9:13-19.)   Defendants state that from the first sponsored plan in 1987, Sypris has always used the assets in the forfeiture account to offset a small portion of its annual discretionary matching contributions.  (DN 47-4, at PageID # 1124, ¶6; DN 47-14, at 70:25-71:19; DN 47-15, at 130:13-25.)  Prior to 2008, the plan documents governing Sypris's retirement plans were custom, individually designed plans written by outside ERISA attorney Carol Myers ("Myers").  (DN 47-5, at 14:2-24.)  The custom plans included a five-year graded vesting scheduling for matching contributions.  (DN 47, at PageID #940.)  A custom plan is a plan written specifically for an employer that contains all of the operative provisions of the

---

[2] Since the Four Plans no longer exist, the Merged Plan is a named party. Fed. R. Civ. P 19(a).

plan in a single document, alongside an explanation of how those operative provisions are supposed to work.  (DN 46-15, at 18:17-22.)  If an employee left Sypris before the end of this five-year schedule, any unvested employer matching contributions were forfeited back to a plan forfeiture account.  (DN 47-6, at PageID # 1184, Section 5.03.)  The custom plans permitted that the forfeitures be used only as a contribution toward the employer matching contributions.  (DN 47-6, at PageID # 1173, 3.05; DN 47-5, at 14:2-15:9.)

In 2008 and 2009, Sypris converted the plan documents governing its retirement plans to an IRS pre-approved volume submitter plan document at the suggestion of Myers.  (DN 47-5, at 19:22-20:21; DN 46-4 to DN 46-8.)  A volume submitter plan is a generic document containing language that has already been reviewed and approved by the IRS and is comprised of an adoption agreement with boxes for the employer to elect key operative provisions and a basic plan document that explains how the employer's elections operate.  (DN 46-15, at 18:23-19:21.)

Sypris's CEO, Jeff Gill ("Gill"), signed the Adoption Agreements ("AA" or "AAs") on behalf of Sypris as the plan sponsor of the Four Plans.  (DN 46-4, at PageID # 392.)  Gill depended on his human resources and legal department to bring to his attention any changes in the plan documents that were different from previous practices, but none were brought to his attention. (DN 46-17, at 17:18-18:9.)  Gill also signed the AAs, which were restated using the same volume submitter plan selected by Myers.  (DN 46-4 through 46-7.)

C.  Relevant Plan Provisions

**(1) Basic Plan**

Section 1.91 provides:

> Plan Administrator. The Plan Administrator is the person designated to be responsible for the administration and operation of the Plan. Unless otherwise designated by the Employer, the Plan Administrator is the Employer. If another Employer has executed a Participating Employer Adoption Page, the Employer referred to in this Section is the Employer that executes the Employer Signature Page of the Adoption Agreement.

(DN 47-3, at PageID # 995.)

Section 7.11 provides,

> Allocation of Forfeitures: The Employer may elect in AA §8-8 how it wishes to allocate forfeitures under the Plan. Forfeitures may be used in the Plan Year in which the forfeitures occur or in the Plan Year following the Plan Year in which the forfeitures occur. In applying the forfeiture provisions under the Plan, if there are any unused forfeitures as of the end of the Plan Year designed in AA §8-8(c) or (d), as applicable, any remaining forfeiture will be used (as designated in AA §8-8) in the immediately following Plan Year….
>
> (c) Reduction of Contributions. The Employer may elect in AA §8-8 to use forfeitures to reduce Employer Contributions and/or Matching Contributions under the Plan. If the Employer elects under the Profit Sharing/401(k) Plan Adoption Agreement to use forfeitures to reduce contributions, the Employer may, in its discretion, use such forfeitures to reduce Employer Contributions, Matching Contributions, or both. The Employer may adjust its contribution deposits in any manner, provided the total Employer Contributions made for the Plan Year properly take into account the forfeitures that are to be used to reduce such contributions for that Plan Year. For example, if the Plan is a Safe Harbor 401(k) Plan, the Employer may designate that forfeitures are first used to reduce the Safe Harbor Employer Contribution or Safe Harbor Matching Contribution under the Plan. (See Section 6.04(i).) If contributions are allocated over multiple allocation periods, the Employer may reduce its contribution for any allocation periods within the Plan Year in which the forfeitures are to be allocated so that the total amount allocated for the Plan Year is proper.
>
> (d) Payment of Plan expenses. The Employer may elect under AA §8-8 to first use forfeitures to pay Plan expenses for the Plan Year in which the forfeitures would otherwise be applied. If any forfeitures remain after the payment of Plan expenses under this subsection, the remaining forfeitures will be allocated as selected under AA §8-8. This subsection (d) only applies to the extent Plan expenses are paid by the Plan. Nothing herein affects the ability of the Employer to pay Plan expenses, as authorized under Section 11.05(a).

(DN 47-3, at PageID #1054.)

Section 11.02 provides,

> Designation of Alternative Plan Administrator. The Employer may designate another person or persons as [t]he Plan Administrator by name, by reference to the person or group of persons holding a particular position, by reference to a procedure under which the Plan Administrator is designated, or by reference to a person or group of persons charged with the specific responsibilities of Plan Administrator.

(DN 47-3, at PageID # 1079.)

Section 11.04 provides,

> Duties, Powers and Responsibilities of the Plan Administrator. The Plan Administrator will administer the Plan for the exclusive benefit of the Plan Participants and Beneficiaries, and in accordance with the terms of the Plan. If the terms of the Plan are unclear, the Plan Administrator may interpret the Plan, provided such interpretation is consistent with the rules of ERISA and Code §401 and is performed in a uniform and nondiscriminatory manner. This right to interpret the Plan is an express grant of discretionary authority to resolve ambiguities in the Plan document and to make discretionary decisions regarding the interpretation of the Plan's terms, including who is eligible to participate under the Plan, and the benefit rights of a Participant or Beneficiary. Unless an interpretation or decision is determined to be arbitrary or capricious, the Plan Administrator will not be held liable for any interpretation of the Plan terms or decisions regarding the application of a Plan provision."
>
> (a) Delegation of duties, powers and responsibilities. The Plan Administrator may delegate its duties, powers or responsibilities to one or more persons. Such delegation must be in writing and accepted by the person or persons receiving the delegation. The Employer must agree to such delegation by an alternative Plan Administrator.
>
> (b) Specific Plan Administrator Responsibilities. The Plan Administrator has the general responsibility to control and manage the operation of the Plan. This responsibility includes, but is not limited to, the following:
>
> (1) To interpret and enforce the provisions of the Plan, including those related to Plan eligibility, vesting and benefits; …
>
> (7) To retain the services of other persons, including Investment Managers, attorneys, consultants, advisers and others, to assist in the administration of the Plan;

(DN 47-3, at PageID #1079-1080.)

Section 11.05(a) provides,

> Reasonable Plan administration expenses. All reasonable expenses related to plan administration will be paid from Plan assets, except to the extent the expenses are paid (or reimbursed) by the Employer….
>
> > (b):  Plan Expense Allocation. The Plan Administrator will allocate plan expenses among the accounts of Plan Participants. The Plan Administrator has authority to allocate these expenses either proportionately based on the value of the Account Balances or pro rata based on the number of Participants in the Plan. The Plan Administrator will determine the proper method for allocating expenses in accordance with such reasonable nondiscriminatory rules as the Plan Administrator deems appropriate under the circumstances…

(DN 47-3, at PageID # 1080.)

### (2) Adoption Agreements

Section 8-8 of the Adoption Agreement, entitled "Allocation of Forfeitures" requires an employer to select one of two options under three categories relating to the allocation of Plan forfeitures as follows:

8-8 **ALLOCATION OF FORFEITURES**. Any forfeitures occurring during a Plan Year will be:

| ER | Match | |
|---|---|---|
| ☐ | ☐ | (a) Reallocated as additional Employer Contributions or as additional Matching Contributions. |
| ☐ | ☐ | (b) Used to reduce Employer and/or Matching Contributions. |

For purposes of this AA §8-8, forfeitures will be applied:

| | | |
|---|---|---|
| ☐ | ☐ | (c) for the Plan Year in which the forfeiture occurs. |
| ☐ | ☐ | (d) for the Plan Year following the Plan Year in which the forfeitures occur. |

Prior to applying forfeitures under this AA § 8-8:

| | | |
|---|---|---|
| ☐ | ☐ | (e) Forfeitures will be used to pay Plan expenses. |
| ☐ | ☐ | (f) Forfeitures will not be used to pay Plan expenses. |

For each of the Four Plans, Sypris chose the following options: Any forfeitures occurring during a Plan Year will be: (b) Used to reduce Employer and/or Matching Contributions. For purposes of this AA §8-8, forfeitures will be applied: (c) for the Plan Year in which the forfeiture occurs. Prior to applying forfeitures under this AA §8-8: (e) Forfeitures will be used to pay Plan expenses. (DN 47-7, at PageID # 1271; DN 47-8, at PageID # 1319; DN 47-9, at PageID # 1359; DN 47-10, at PageID # 1397.)

### D.  Which Standard Applies: *De Novo* Review or Arbitrary and Capricious?

A denial of benefits challenged under 1132(a)(1)(B) must be reviewed under a *de novo* standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, in which case a deferential standard of review is appropriate. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 102 (1989). If the administrator or fiduciary is operating under a conflict of interest, the *de novo* standard still applies, but the conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Id.* at 103. The standard of review announced in *Firestone* applies to plan interpretation. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 552 (6th Cir. 1998); *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1247 (6th Cir. 1991); *Hunter v. Caliber System Inc.,* 220 F.3d 702, 712 (6th Cir. 2000).

The Court in *Firestone* did not suggest that "discretionary authority" hinges on incantation of the word "discretion" or any other "magic word," but rather the breadth of the administrator's power. *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 n.2 (6th Cir. 1992). This Circuit has consistently required that the plan contain a "clear grant of discretion to the administrator to determine benefits or interpret the plan. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994). Each plan must be read in its entirety and language claimed to create the required degree of discretion must be examined in context. *Wulf*, at 1373. "[T]o determine whether arbitrary and capricious review applies, we look to whether the words in the contract grant discretionary authority to the administrator, not *how* the administrator exercised that discretion." *Swann v. Ryder System, Inc.,* 2018 WL 2376558 at *3 (E.D. Ky. May 23, 2018).

However, the scope of discretion is determined by the four corners of the Plan. As stated in *Anderson v. Great West Life Assurance Co.*, 942 F.2d 392, 395-396 (6th Cir. 1991),

9

> Discretion is not an all-or-nothing proposition. A plan can give an administrator discretion with respect to some decision, but not others. A fiduciary or administrator does not have discretion with respect to all aspects of a plan simply because the administrator has discretion to interpret some provisions…[T]he area within which discretion can be exercised or the amount of discretion exercised depends on the scope of the grant. It is quite consistent with the teachings of Firestone than an administrator might be given discretion with respect to some decisions but not others or given discretion on some decisions to be exercised within certain bounds. If so, the administrator's decisions on issues involving the exercise of that discretion are properly reviewed under a deferential standard, while all other decisions are properly reviewed de novo. A plan administrator has exactly the amount and type of discretion granted by the plan, no more, and no less… Once an administrator is found to have a degree of discretion under a plan, the reviewing court must determine the exact contours of the discretionary authority.

*Id.*

### (1) The Basic Plan Gives the Plan Administrator Discretion

First, the Court must analyze the question of whether discretion has been granted by the plan documents to determine which standard of review applies. *Anderson v. Great West Life Assur. Co.*, 942 F.2d 392, 395 (6th Cir. 1991). Because the Plan is governed by ERISA, we apply federal common law rules of contract interpretation in making the determination. *Perez*, at 556 (*citing Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407, 411 (7th Cir. 1996) *abrogated by Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 265 (6th Cir. 2018)). When interpreting ERISA plan provisions, general principles of contract law dictate that we interpret the provisions according to their plain meaning in an ordinary and popular sense. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000) (*citing Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998)).

Defendants contend that since the Basic Plan Document gives the Plan Administrator discretionary authority to construe the terms of the plan, the Plan Administrator's interpretation of

Plan terms is reviewed under the arbitrary and capricious standard and must be accepted if the administrator's interpretation is reasonable.  (DN 47, at PageID # 939.)

Plaintiff argues that Defendants have failed to establish that they have discretionary authority to interpret the Plans' forfeiture provisions.  (DN 50, at PageID # 2366; DN 54 at PageID #2468.) Plaintiff argues that instead this Court should apply a *de novo* standard of review to the forfeiture provisions at issue because they are clear and unambiguous.  (DN 50, at PageID # 2364.)  Plaintiff argues that the language granting the Plan Administrator discretion is explicitly limited to resolving unclear terms of the plan such that this Court should not extend any discretion to the Plan Administrator to interpret the forfeiture provisions.  (DN 54, at PageID #2470.)

Pursuant to *Firestone*, the Court first examines the plan to determine whether or not discretion has been explicitly provided for.  Based on the language in Section 11.04, the Basic Plan clearly grants discretion to the plan administrator to interpret provisions of the plan as long as the interpretation is consistent with the rules of ERISA and is performed in a uniform and nondiscriminatory manner.  (DN 47-3, at PageID #1079-1080.)

Under *Anderson v. Great West Life Assur. Co.*, 942 F.2d 392 (6th Cir. 1991) the Court must then determine the scope of the discretionary authority provided.  The language in the second sentence of Section 11.04 provides, "If the terms of the Plan are unclear" then "the Plan Administrator may interpret the Plan."  Section 11.04 goes on to provide the limitations of the interpretation, but a condition precedent triggering discretionary authority is that the terms be unclear.  Upon comparing the language in Section 11.04 to other cases wherein the Sixth Circuit has found complete *Firestone* deference, the discretion provided for in Section 11.04 is limited.

*See Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 264 (6th Cir. 2018) ("the power and discretion…to construe all terms, provisions, conditions and limitations of the Plan.")

Accordingly, the Court must look to the Basic Plan to determine whether the provisions governing forfeitures are unclear such that the Plan Administrator has discretion to interpret them. If the forfeiture provisions are unclear, then this Court will review the decision to use forfeiture accounts for matching contributions instead of plan expenses under the arbitrary and capricious standard as that interpretation would be within the discretion granted under Basic Plan 11.04. However, if the forfeiture provisions are clear, then the Court will review the decision under the *de novo* standard of review since the discretion provided to the plan administrator in Basic Plan 11.04 is limited to those provisions that are unclear. For purposes of evaluating whether the provisions are "unclear" the parties have argued the standard for "ambiguity" and treat the terms synonymously. (DN 46-1, at PageID # 328-329; DN 49, at PageID #2339.)

**(2) The Plan Provisions Governing Forfeitures are Ambiguous and Unclear**

The question of whether the language in an agreement is ambiguous is a question of law. *United States v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003). Ambiguity exists when a term is subject to more than one reasonable interpretation. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994). Extrinsic evidence may not be used to create an ambiguity where none exists. *Adams v. Anheuser-Busch Companies, Inc.*, 758 F.3d 743, 747 (6th Cir. 2014) (*citing United States v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003)). The mere fact that parties propose competing interpretations of language in a plan does not dictate a finding that the provision is ambiguous. *Adams* at 748 (*citing Shelby Cnty. Health Care Corp. v. The Majestic Star Casino LLC Grp. Health Benefit Plan*, 581 F.3d 355, 370 (6th Cir. 2009)). However, ambiguity exists when a term is subject

12

to more than one reasonable interpretation. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994). Any ambiguity that invites an exercise of discretion must be apparent on the face on the contract. *Adams* at 748.

Both parties submit that whether a plan term is ambiguous is a question of law, however Plaintiff argues that the provisions governing the forfeiture accounts are not ambiguous and Defendant argues that those provisions are ambiguous. *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 851 (6th Cir. 2006). (DN 55, at PageID #2507; DN 50, at PageID #2359, 2367.)

First, Defendants argue that Sections 7.11 and 11.05 of the Basic Plan Document conflict on the face of the Plan and are ambiguous because Section 11.05(b) authorizes Sypris to arrange for Plan expenses to be paid by Plan participants while Section 7.11(d) allows for Sypris to elect to use forfeitures to pay Plan expenses. (DN 47, at PageID # 946.)

Defendants argue that 11.05(b) provides, "[t]he Plan Administrator will allocate plan expenses among the accounts of Plan Participants" and that "[t]he Plan Administrator will determine the proper method for allocating expenses in accordance with such reasonable nondiscriminatory rules as the Plan Administrator deems appropriate under the circumstances." (DN 47, at Page ID # 952; DN 49, at PageID #2343.) Defendants argue that this language contradicts Section 7.11(d) which provides that, "the Employer may elect under AA §8-8 to first use forfeitures to pay Plan expenses…If any forfeitures remain after the payment of Plan expenses under this subsection, the remaining forfeitures will be allocated as selected under AA §8-8." (DN 47, at PageID # 952.) Further, 7.11(d) explicitly provides, "This subsection (d) only applies to the extent Plan expenses are paid by the Plan. Nothing herein affects the ability of the Employer to pay Plan expenses, as authorized under Section 11.05(a)." (DN 47-3, at PageID #1054.) Whether Section 7.11(d) ever

13

comes into play is ambiguous because under Section 11.05(b) the Basic Plan provides explicitly, "the Plan administrator will allocate plan expenses among the accounts of Plan Participants." (DN 47-3, at PageID # 1080.)  Defendants argue Sypris understood the expansive language in Section 7.11(d) together with AA §8-8 to be permissive.  (DN 47, at PageID # 952; DN 49, at PageID #2345.)

Plaintiff says that there is no conflict amongst the forfeiture provisions and the plan expense provisions.  (DN 50, at PageID # 2364.)  Plaintiff says that Defendants misconstrue the nature, substance, and purpose of each provision.  (DN 50, at PageID # 2367.)  Plaintiff argues that Section 11.05 of the Basic Plan Document and Section 7.11 of the same document are not in conflict because the two sections serve their own distinct purposes; Section 11.05 entitled "Plan Administration Expenses" lays out the role of the Plan Administrator pertaining to plan expenses whereas Section 7.11(d) is labeled "Allocation of Forfeitures" and pertains only to how forfeited funds may be allocated.  (DN 50, at PageID # 2367.)

Plaintiff also argues that 11.05(a) provides that expenses will be paid from Plan assets, that forfeiture account funds are Plan assets, and the language contemplates that there are other means of paying Plan expenses. (DN 50, at PageID # 2368.)  However, the Court notes there is no definition for "asset" provided for in Section 1 of the Basic Plan though it provides other definitions for terms throughout the Basic Plan.

Plaintiff argues that the two provisions act in concert; Section 7.11 provides that the Employer may elect to first use forfeitures to pay plan expenses, but the Plan Administrator still maintains authority to allocate any remaining plan expenses from participant accounts, and this provision only applies when there are forfeitures available to pay plan expenses.  (DN 50, at PageID # 2369.)

14

Plaintiff argues that the language in Subsection 7.11(d) does not affect the Plan Administrator's authority to allocate expenses as found in Subsection 11.05(b), and under Defendants' interpretation of the provisions forfeitures could never be used to pay Plan expenses.  (DN 50, at PageID # 2369.)

The undersigned recommends a finding that based on a plain reading of the governing documents of the Plan, Defendants' interpretation is a reasonable interpretation of the document, *i.e.* that the provision providing that the Plan Administrator must allocate expenses among the accounts of plan participants contradicts the earlier provision providing that the employer has the option to use forfeitures to pay plan expenses, given that the forfeiture account is separate from the accounts of individual plan participants.  The undersigned also recommends a finding that Plaintiff's interpretation, *i.e.* that Section 7.11 provides that the Employer may elect to first use forfeitures to pay expenses but otherwise that the Plan Administrator maintains authority to allocate expenses from plan participant accounts, is also a reasonable interpretation of the language in the Basic Plan Documents.

Second, Defendants similarly argue the plain language of Section 11.05(b) is in direct contradiction to the language of AA §8-8(e).  (DN 49, at PageID #2343.)  AA §8-8(e) provides that "[p]rior to applying forfeitures under this AA §8-8: forfeitures will be used to pay Plan expenses."  Plaintiff argues that no conflict exists between the forfeiture provisions, Section 7.11 of the Basic Plan and AA §8-8(e), and the plan expense provisions in 11.05(b). (DN 54, at PageID# 2469.)

Similar to the above argument, the Court recommends a finding that Defendants' interpretation is reasonable, *i.e.* that Section 11.05, which provided a requirement that the Plan Administrator

allocate expenses among the accounts of plan participants using mandatory language, was contradictory to the language in AA §8-8(e), which provided that forfeitures will be used to pay plan expenses.  The undersigned also recommends a finding, as stated in the above section, that Plaintiff's interpretation, *i.e.* that Section 7.11 provides that the Employer may elect to first use forfeitures to pay expenses but otherwise that the Plan Administrator maintains authority to allocate expenses from plan participant accounts, is also a reasonable interpretation of the language in the plan. Given that there are two reasonable interpretations of the language in the Basic Plan and the AAs when the provisions are read together, the Court recommends a finding that  Sections 11.05(b), 7.11(d) and AA §8-8 are ambiguous and unclear.

Third, Defendants argue another ambiguity is created by the fact that Section 8-8 of the Adoption Agreement form forces the Employer to choose between only two options but that there are three lawful possibilities.  The three possibilities set forth by Defendants are that (i) forfeitures are required to be used to pay plan expenses regardless of the Plan Administrator's wishes; (ii) forfeitures are merely permitted to be used to pay plan expenses at the ongoing election of the Plan Administrator; and (iii) forfeitures are prohibited from being used to pay plan expenses even if the Plan Administrator wishes to do so.  (DN 49, at PageID #2344.)  Defendants argue that since AA §8-8(f) prohibits forfeitures from being used to pay plan expenses, that it was then reasonable to infer that §8-8(e) permits that forfeitures could be used to pay plan expenses.  (DN 49, at PageID #2344.)  Defendants argue that to interpret AA §8-8(e) as a mandatory requirement would mean that the AAs arbitrarily eliminated the most flexible option; that the Plan Administrator can choose on an ongoing basis how to pay plan expenses.  (DN 49, at PageID #2344.)

Plaintiff argues that based on a plain reading of AAs §8-8(e) and §8-8(f) there are only two choices: to use forfeitures to pay plan expenses prior to being used for employer contributions, or not to use forfeitures to pay plan expenses prior to being used for employer contributions and that if Sypris did not want this choice then they could have used a different plan.  (DN 54, at PageID #2469.)

The Court does not believe that the two choices presented in AA §8-8(e) and (f) create an ambiguity simply because the AA omits a third, more flexible choice.

Based on the foregoing arguments, the undersigned recommends a finding that the forfeiture provisions are unclear and therefore the undersigned will review the decision to use forfeiture provisions for matching contributions instead of plan expenses under the arbitrary and capricious standard as that interpretation is within the discretion granted under Section 11.04 of the Basic Plan.

### (3) The Arbitrary and Capricious Standard

The arbitrary and capricious standard gives deference to the reasonable interpretation of plan terms by a plan administrator.  *Hunter v. Caliber Sys. Inc.*, 220 F.3d 702, 710 (6th Cir. 2009) (*quoting Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 692 (6th Cir. 1989). Furthermore, a Court must accept a plan administrator's rational interpretation of plan terms "even in the face of an equally rational interpretation offered by the [plaintiff]."  *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).   The arbitrary and capricious standard is the least demanding form of judicial review of administrative action.  *Hunter* at 710.  "Though the standard is not without some teeth, it is not all teeth. An extremely deferential review, to be true to its purpose, must offer an extreme level of deference to the administrative decision."  *McClain v.*

17

*Easton Corp. Disability Plan, 740 F.3d 1059*, 1064 (6th Cir. 2014).  "Even if the Court would not have come to the same conclusion as the Plan Administrator, as long as there is a reasonable basis for the decision, it must be upheld."  *Senzarin v. Abbot Severance Pay plan for Employees of KoS Pharms,* 361 Fed. Appx. 636, 640 (6th Cir. 2011).  The plan will be upheld if it is the result of a deliberate, principled reasoning process that is supported by substantial evidence.  *Swann v. Ryder System, Inc.*, 5:17-CV-330-JMH, 2018 WL 2376558, *3 (E.D. Ky. May 23, 2018) (*citing Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006)).  However, this does not require the Court to merely rubber stamp the administrator's decision. *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004).

### (4) Extrinsic Evidence

Defendants argue that in considering a Plan Administrator's interpretation of plan terms under the arbitrary and capricious standard, the Court should consider "past interpretation and past application of the plan and consistency of the interpretation with a fair reading of the plan, including the goals of the plan to determine whether the plan administrator's interpretation is rational."  *Koebel v. Southern Graphic Systems, Inc. Pension Plan*, No. Civ. A. 05-149-C, 2005 WL 2620589, *2 (W.D. Ky. Oct. 12, 2005) (*citing Artley v. McLouth Steel Corp.*, No. 86-2107, 1988 WL 56717, at *4 (6th Cir. June 3, 1988); *Adcock v. Firestone Tire & Rubber Co.,* 822 F.2d 623, 626 (6th Cir. 1987)).  "If the plan documents are ambiguous with respect to a particular term, then, under federal common law, a court may use traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence."  *Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1005 (6th Cir. 1993).  However, consistent misinterpretation of a term "does not mean that such misinterpretation should be deemed

part of the Plan and sanctioned as lawful." *Epright v. Envtl. Res. Mgmt., Inc.*, 81 F.3d 335, 340 (3d Cir. 1996).

Plaintiff argues that this Court should disregard any evidence outside of the Plan Documents because there is no ambiguity on the face of the Plan. (DN 50, at PageID # 2364.) Specifically, Plaintiff argues that the Court should disregard Defendants' references to Sypris's intent or reliance on counsel in electing AA §8-8(e), the intent of the Plan Administrator in electing §8-8(e) and should disregard any evidence of historical and past practices. (DN 50, at PageID #2370; DN 46-1, at PageID # 328.)    Plaintiff argues that past practice is irrelevant since any old plan documents have been superseded by the current Plan Documents. (DN 50, at PageID # 2361.)

The Court believes that the use of extrinsic evidence is proper given the Court's recommended finding that the provisions at issue are ambiguous. In *Adcock v. Firestone Tire & Rubber Co.,* 822 F.2d 623 (6th Cir. 1987) nonunion salaried employees brought an action under ERISA to recover reduction in force termination pay under the employer's termination pay plan. *Id.* at 623. In interpreting the employer's company-wide termination pay policy, the Court looked at three prior plant sales and the determination of benefits as a result of those sales to support the finding that based on the consistency of interpretation, the defendant's interpretation of the plan in this instance was not arbitrary or capricious. *Id.* at 624-626.

Unlike in *Adcock*, wherein the same plan terms were being interpreted for different plant sales, in the instant case there are different plan terms at issue after the 2008 adoption of the Basic Plan. However, Defendant does not argue that the past plan provisions are controlling in this instance, instead Defendants argue that their interpretation of the plan provisions was deliberately informed by the way the past plan operated and was therefore not arbitrary. (DN 47, at PageID #952.)

19

Accordingly, the Court's considers evidence regarding the advice of counsel and the intent of the signatories in the interpretation of the ambiguous forfeiture provisions in the evaluation of whether the interpretation by Defendants was arbitrary and capricious.

### (5) Defendants' Interpretation Was Not Arbitrary and Capricious

Plaintiff argues that the Plan Administrator did not exercise its discretion to interpret the forfeiture provisions, and even if it did, its interpretation lacked a sufficient rational basis such that it was arbitrary and capricious.  (DN 46-1, at PageID #327; DN 50, at PageID # 2372.)  Defendants argue their decision was not arbitrary and capricious and that the evidence shows that Sypris's interpretation of the plan provisions resulted from a deliberate process that included consideration of its past use of forfeitures toward matching contributions, its intent to continue this use when it converted to a volume submitter plan document, and its desire to add flexibility to also use forfeitures to pay plan expenses if it so chose.  (DN 47, at PageID # 952; DN 49, at PageID # 2349.)

First, Plaintiff argues that no fiduciary exercised their discretionary authority to interpret the forfeiture provisions.  (DN 50, at PageID #2373.)  Plaintiff argues that no one in the corporate office ever read the forfeiture provisions on behalf of Sypris including CEO Jeff Gill, Corporate Director of Benefits James Staron and Vice President/Chief Financial Officer Anthony Allen.  (DN 46-17 at 11:16-18; DN 50-2 at 26:25-27:4; DN 50-3 at 58:25-59:2; DN 50, at PageID # 2358.)  Plaintiff argues that CEO Gill, the signatory of the AAs on behalf of Sypris, admitted he did not read the Plan Documents and did not know how forfeitures were used by the plans in the past and James Staron admitted he did not know how forfeitures were used in 2012 to 2015. (DN 46-17 at 11:16-18, 9:20-22; 13:20-14:4; DN 46-16 at 110:15-111:2.)  However, Plaintiff does not include

20

the full testimony of Staron who then stated that Defendant Linda Wilson ("Wilson") and Amy Kirk would know how the forfeitures for the years 2012 to 2015 were used.  (DN 46-16, at 110:24-111:4.)

Plaintiff argues that reliance on outside counsel, Myers, does not mean that Sypris interpreted the plans because she is not a fiduciary to the plans and her discussions with Wilson were prior to the adoption of the plans.  (DN 50, at PageID #2372.)  Plaintiff also argues that Myers never referred Wilson to the explicit language of AA §8-8.  (DN 46-15, at 80:13-18.)  However, in her deposition testimony Myers stated that she discussed the use of the forfeitures to pay expenses with Wilson multiple times via telephone, though the exact number of times is inconveniently omitted by Plaintiff, and Myers testified that she discussed the concepts underlying AA §8-8 with Linda Wilson.  (DN 46-15, at 80:13-24.)

Plaintiff also argues that this Court should disregard Gill's declaration in DN 47-4 as self-serving and contradictory to his testimony in DN 46-17 at PageID #903, 905.  (DN 50, at PageID #2371.)  However, based on a plain reading of the affidavit and the deposition transcript, they are not contradictory. This is especially so in light of the fact that Plaintiff acknowledges that the affidavit focuses on rationale instead of interpretation.

Defendants contend that Sypris did interpret the plan provisions and that each year the plans were audited by an independent third-party auditor, Gramling & Haya CPAs.  (DN 47-24 through DN 47-27.)  Based on a review of  the Independent Auditor's Report attached to the Form 5500 filings, the CPAs only attest that the Form is, "in accordance with auditing standards generally accepted in the United States of America and, in our opinion, are presented in compliance with the Department of Labor's Rules and Regulations for Reporting and Disclosure under the Employee

21

Retirement Income Security Act of 1974." (DN 47-24, at PageID #1863.)   However, whether Defendants' filings are in compliance with accounting standards is different from whether the plan accounts were handled in a way that is consistent with the Basic Plan documents.

More relevant to the analysis of whether Defendants interpreted the plan at all, the Defendants argue that Wilson and Staron routinely discussed issues related to the administration of the Four Plans with ERISA counsel Myers.  (DN 47-5 at 15:10-16, 47:13-48:16, 59:7-60:6; DN 47-15 at 42:13-44:7;  DN 47-22  at  47:14-48:6,  90:21-91:15,  95:16-96:19;  DN  47,  at  PageID  #  955.) Defendant further argues that they relied on Myers's actions not to qualify as an act of discretion by an administrator on behalf of Sypris, but instead to support the argument that the interpretation of the plan was reasonable and not arbitrary and capricious. (DN 55, at PageID #2509.)

The testimony shows that Sypris interpreted the Plan through its employees with the assistance of counsel and therefore, the undersigned does not think that Plaintiff's argument that Sypris's decision was arbitrary and capricious because it did not exercise any discretion or perform any interpretation according to Section 11.04 is persuasive.  Plaintiff does not cite to case law stating that only the corporate executives or the plan signatory must be the ones to interpret the plan provisions in order for discretion to have been exercised.   Plaintiff disregards Wilson's interpretation of the plan documents when it argues that there is no evidence that anyone at Sypris exercised discretion (DN 46-1, at PageID #332-333; DN 50, at PageID # 2372), but such reasoning is at odds with Plaintiff's arguments that Wilson is simultaneously a fiduciary of the Plan. (DN 50, at PageID # 2360.) It is inconsistent to argue Wilson's actions in her role as Director of Human Resources for Sypris make her a fiduciary under Count II but then to disregard her interpretation

of the provisions at issue when determining whether Sypris exercised the discretion granted in Section 11.04.

Second, Plaintiff argues that prior to adopting the volume submitter plans, Sypris had been utilizing forfeiture funds to reduce its employer matching contributions in accordance with the plans' governing documents (DN 46-9, at PageID # 689-690) and upon adopting the volume submitter plans the practice continued without interruption in direct contradiction to the Basic Plan Documents.  (DN 46-1, at PageID #332.)  Plaintiff cites to the deposition testimony of Wilson to support this argument.   The testimony reads as follows: "Q: Who made the decision to use forfeitures [to pay matching employer contributions], do you know? A: Our plan document from the beginning allowed us to do that." (DN 46-14 at 130:13-25.)   Plaintiff argues that the act of an "employer or other plan sponsor in amending, modifying or terminating a plan does not constitute an act of plan management or administration." Plaintiff argues that Sypris as the Plan Sponsor, may have had certain intentions in adopting the plan, but the Plan Administrator is tasked with enforcing the actual terms of the plan.  (DN 54, at PageID #2470.)

Defendants argue that consistency with past practice is proof their decision was not arbitrary or capricious because they have always put forfeitures toward the discretionary matching contribution and they relied on a representation from outside counsel during the conversion that the Basic Plan would allow for the same use plus additional flexibility.  (DN 49, at PageID #2350-2351.)  Defendants argue that Sypris has always interpreted AA §8-8(b) and (e) to mean that forfeitures may first be used to pay plan expenses at the Plan Administrator's option or may first be used to pay for employer matching obligations in any given plan year.  (DN 47, at PageID # 951.)

23

The evidence shows when making elections in the Plan Documents, Sypris wanted the flexibility to use assets in the forfeiture accounts towards either the annual matching contributions or plan expenses.  (DN 47-11, at 114:25-115:3; DN 47-4, at PageID #1124, ¶6-8.)  The testimony provided by John McGeeney, the Vice President, General Counsel and Secretary of Defendant Sypris, stated that "[Myers] knew her client, and in this instance, the primary—the general order was, we're not looking to make changes. We're looking to pick up that flexibility that you're talking about. And if there are changes, flag them for us, make them visible, let's elevate them, and make sure we understand. We're not adopting this in order to change something. That wasn't the underlying motivation for restating the plan really only a few years after we had done the last one."  (DN 47-11 at 79:19-80:11; DN 50-5, at PageID #2430.)   In transmitting the final plan documents Myers stated, "Forfeitures in the Plan can now be used pay plan expenses if Sypris so directs."  (DN 46-15, at 40:21-41:4.)  The July 20, 2009 memorandum from Myers to Wilson regarding the Technologies Plan provides, "Forfeitures under the plan are used to reduce employer contributions. We have added wording giving you discretion to also use forfeitures to pay plan expenses in case you want to."  (DN 47-12, at PageID #1464.)  The memorandum regarding the Kenton Plan has identical language, and even has handwritten notes in the margin pointing to "AA, Basic Plan Doc" after this sentence.  (DN 47-13, at PageID #1471.)

Based on the foregoing, the undersigned believes Defendants have demonstrated a past practice of using forfeitures to pay for matching contributions under the preceding custom plan, an intention to continue that practice when adopting the volume submitter plan, and multiple conversations with counsel who provided that the plan documents in fact provided such flexibility.  Based on the evidence, even weighing the fact that Sypris would materially benefit from the interpretation of

the forfeiture provisions in this way, the undersigned recommends a finding that Defendants clearly engaged in a deliberate reasoning process in interpreting the forfeiture provisions.

Third, Plaintiff argues that even if Sypris exercised authority to interpret the plan, the decision to use the forfeitures to reduce employer matching contributions was contrary to the plain meaning of the forfeiture provisions and was therefore arbitrary and capricious. (DN 46-1, at PageID #333.) Plaintiff argues that Defendants the use of the word "will" in AA §8-8(e) to be permissive instead of mandatory is inconsistent with other instances of the same language in the Plan Documents and therefore Defendants acted contrary to the term's plain meaning without any sufficient reasoning. (DN 46-1, at PageID #334; DN 54, at PageID #2471.)  The forfeiture provisions in AA §8-8(e) of the Adoption Agreement provide that forfeitures "will be used" to pay plan expenses "[p]rior to applying forfeitures under this AA §8-8." (DN 46-4 at 25; DN 46-1, at PageID # 325.) Plaintiff argues that basic principles of word construction provide that "will" is mandatory and signifies a required action. (DN 50, at PageID # 2369; DN 46-1, at PageID # 328.)  Plaintiff argues that Defendants have not provided a rational basis for interpreting this particular "will" in AA §8-8(e) as permissive when it does not read other instances of "will" throughout the AAs in the same manner.  (DN 50, at PageID # 2369.)  Plaintiff argues that all three choices in AA §8-8 use the same "will" language.  (DN 46-1, at PageID #229-330.)

Defendants argue that the Plaintiff's arguments depend on the presumption that the election of AA §8-8(e) elevates one subset of the plan's assets, namely forfeitures, to be used to pay expenses before other plan assets, such as participants' accounts, can be used to do so.  (DN 55, at PageID #2497.)  Defendants argue this is incorrect because under Section 11.05(b), the Plan Administrator is authorized to pay the plan expenses by deducting them from participants' accounts, without any

precondition that forfeitures must be used instead.  (DN 55, at PageID # 2498.)  Defendants argue that nothing in AA §8-8(e) or any other plan provision cross-references Section 11.05(b) that would restrict or suspend the Plan Administrator's authority to pay expenses under any circumstances.  (DN 55, at PageID # 2500.)  Defendants contend that Sypris's decision was not arbitrary or capricious because Section 11.05(b) expressly permits the deduction of expenses from participants' accounts in any reasonable, nondiscriminatory manner it deems appropriate because nothing in Section 11.05(b) is conditional upon, or refers to the AAs, the use of forfeitures, or the impact of any "elections" that the employer may have made.  (DN 55, at PageID #2499.)

Defendant argues that the use of "first" in Section 7.11(d) does not mean that forfeitures alone, and no other plan assets, must be used to pay plan expenses until exhausted.  (DN 55, at PageID # 2501.) Defendant argues that at most, AA §8-8(e) prioritizes the use of forfeitures to pay expenses over the other uses of forfeitures in AA §8-8, but not over any of the other methods of payment expressly authorized in Section 11.05(b).

Defendant contends that the terms of the AAs and the Basic Plan Document can reasonably be understood to merely permit the use of forfeitures to pay plan expenses, without prohibiting such expenses to be paid from participants' accounts under Section 11.05(b).  (DN 49, at PageID #2341.)

Given the ambiguity created by the language in AA §8-8 and Sections 7.11(d) and 11.05 of the Basic Plan Document when read together, the undersigned believes the use of the word "will" to be read permissively so that the plan may function was the result of a deliberate reasoning process. Further, deference must be given to the Plan Administrator even if Plaintiff's interpretation is also rational. Based on the foregoing, the undersigned recommends finding that Defendants did not act

in an arbitrary and capricious manner when interpreting the plan to allow for plan participants to pay for plan expenses while using forfeitures to reduce the employer matching contribution even in light of a conflict of interest created by Sypris' financial benefit in interpreting the provisions this way.

E. Count I: The Individual Defendants

In Count I, Plaintiff alleges that the Committee Members, consisting of the Individual Defendants, violated the Employee Retirement Income Security Act, 29 U.S.C.A. §1001 ("ERISA") §404(a)(1)(A) and 29 USC §1104(a)(1)(A); ERISA §404(a)(1)(B) and 29 U.S.C. §1104(a)(1)(B); and ERISA §404(a)(1)(D) and 29 U.S.C. §1104(a)(1)(D). (DN 38, at PageID #238 ¶11, 242.) Plaintiff alleges that from January 1, 2012 to January 1, 2016 the Individual Defendants had the responsibility of ensuring that the forfeiture funds were used in accordance with the Four Plan's governing documents.  (DN 38, at PageID #241.)  Plaintiff alleges that during the period of January 1, 2012 through January 1, 2016, the Committee Members failed to ensure that the forfeiture funds were first used to pay plan expenses such as advisory fees, annual report fees, legal fees and recordkeeping fees prior to using them to reduce employer contributions. (*Id.*) Instead, Plaintiff alleges the forfeiture funds were used to reduce employer contributions.  (*Id.*)

Defendants argue that they are entitled to judgment as a matter of law because the Individual Defendants could not have been members of a non-existent "Committee" and that they did not have the power, responsibility or obligation to determine the source of the matching contribution. (DN 47, at PageID # 953.)

Plaintiff argues that according to the written AA of the Solutions Plan, Technologies Plan and Kenton Plan, the Plan Administrator in charge of administering and operating the 401(k) plans was

27

the "Retirement Savings Plan Advisory Committee as delegated by Sypris Solutions, Inc."  (DN 46-4, at PageID # 351; DN 46-6, at PageID # 436; DN 46-7, at PageID # 474.)  Plaintiff argues that summary judgment should be denied to Defendants because there are genuine issues of material fact regarding whether the "Retirement Savings Plan Advisory Committee" existed and whether the Individual Defendants were part of that committee.  (DN 50, at PageID #2373.)  Plaintiff argues that Sypris formed a Committee called the "401(k) Advisory Committee" which monitored fund performance and discussed plan issues such as communication programs to plan participants and selection of plan service providers.  (DN 50-4, at 30:17-31:10, 44:8-45:23, 46:4-18.)  However in Plaintiff's own motion, Plaintiff also argues that Sypris is the default Plan Administrator that had the ultimate responsibility of ensuring that the forfeitures were used in accordance with the four 401(k) plans' governing documents.  (DN 46-1, at PageID # 318.)

In reply, Defendants argue that the "401(k) Advisory Committee" was actually the committee named as the Plan Administrator in the Plan documents, but also that these new allegations are not in the First Amended Complaint.  (DN 55, at PageID #2508.)

The parties have already stipulated that Sypris was the Plan Administrator and did not form the Retirement Savings Plan Committee.  (DN 47-1, at PageID # 963, ¶17-189.)  Pursuant to Section 1.91 of the Basic Plan, the Plan Administrator is Sypris unless otherwise designated.  (DN 47-3, at PageID #995.)  Whether the 401(k) Advisory Committee was the same as the Retirement Savings Plan Advisory Committee is now a moot point as the underlying allegations are that the Committee Members, comprised of the Individual Defendants, failed to ensure the forfeiture funds were first used to pay plan expenses.  In the above section, the undersigned has already recommended finding that Defendants' exercise of discretion to interpret the Basic Plan provisions

28

to allow the use of money in the forfeiture account to pay for matching contributions was not arbitrary and capricious and therefore any factual dispute about the existence of a committee is immaterial.  Accordingly, the Individual Defendants' failure to ensure that the forfeiture funds were first used to pay plan expenses prior to using them to reduce employer contribution cannot be the basis for breach of fiduciary duty claims under ERISA.  Accordingly, the undersigned recommends that Defendants' motion for summary judgment as to Count I be GRANTED.

F.   Count II: Defendants Wilson and Staron

Plaintiff alleges that from January 1, 2012 to January 1, 2016 Defendants Wilson and Staron did not use the forfeiture funds to pay Plan expenses prior to using them to reduce employer contributions.  (DN 38, at PageID # 243.)  Plaintiffs allege that as a result Defendants Wilson and Staron violated ERISA §404(a)(1)(A) and 29 USC §1104(a)(1)(A); ERISA §404(a)(1)(B) and 29 U.S.C. §1104(a)(1)(B); and  ERISA  §404(a)(1)(D) and 29 U.S.C. §1104(a)(1)(D).   (DN 38, at PageID #243-244.)

Plaintiff moves for summary judgment against Defendant Wilson for breaching her fiduciary duties and engaging in prohibited transactions in violation of ERIA 29 USC §1001.  (DN 46-1, at PageID #313.)  Plaintiff argues that Wilson acted as a fiduciary under ERISA §3(21)(A) when she used forfeitures to reduce employer matching contributions.  (DN 46-1, at PageID #326; DN 50, at PageID # 2360.)  Plaintiff argues that Wilson had a duty to act for the exclusive purpose of providing benefits to plan participants but violated that duty and 29 USC  §1104(a)(1)(A) when she misdirected the forfeiture account funds to pay a portion of Sypris's employer matching contribution instead of plan expenses.  (DN 46-1, at Page ID #334.)

Plaintiff also argues Defendant Wilson violated 29 USC §1106(a)(1)(D) since Sypris was a party in interest to the plans under 29 USC §1002(3)(14)(A) and (C). (DN 46-1, at PageID #335.) Plaintiff argues that when Wilson directed the forfeitures to be applied towards Sypris's employer matching obligation, that caused a direct financial benefit to Sypris by lowering the amount Sypris had to pay in employer matching contributions. (DN 46-1, at PageID #335.) Plaintiff argues Defendant Wilson knew or should have known she was causing a party in interest to use and benefit from plan assets in violation of 29 USC §1106(a)(1)(D). (DN 46-1, at PageID #335.)

In response to Plaintiff's motion for partial summary judgment, Defendants argue that Wilson did not breach any duty owed to the Plan or their participants because the use of forfeitures was permitted under Sypris's reasonable interpretation of the ambiguous terms of the plans. (DN 49. at PageID #2354.)

Defendants argue they are entitled to summary judgment for Count II because based on Sypris's interpretation of the Basic Plan, the undisputed facts support a finding that Defendants Wilson and Staron adhered to the terms of the plans by using the assets in the forfeiture account toward the matching contribution. (DN 47, at PageID # 955.)

In Plaintiff's response to Defendants' motion for summary judgment Plaintiff argues that Defendant Staron supervised Wilson and other human resource employees who applied forfeitures towards the matching employer contribution. (DN 50-5, at 33:21-34:6.) Plaintiff argues there is an issue of material fact regarding Defendant Staron's involvement with the alleged fiduciary breaches because Defendants Staron and Wilson had decision-making authority with respect to forfeitures. (DN 50-5 at 33:21-34:6; 34:23-35:10.)

30

Given the recommendation above that Defendants' exercise of discretion to interpret the Basic Plan provisions to allow the use of money in the forfeiture account to pay for matching contributions was not arbitrary and capricious, any factual dispute about the degree of control Staron had is immaterial.  Also, Wilson's failure to ensure that the forfeiture funds were first used to pay plan expenses prior to using them to reduce employer contribution cannot be the basis for breach of fiduciary duty or engaging in prohibited transaction claims under ERISA.

Accordingly, the undersigned recommends that Defendants' motion for summary judgment as to Count II be GRANTED. The undersigned also recommends that Plaintiff's motion for partial summary judgment as to Defendant Wilson be DENIED.

### G.  Count III: Defendant Sypris Solutions Inc.

Plaintiff alleges that from January 1, 2012 to January 1, 2016, Sypris failed to monitor the Individual Defendants to ensure that the forfeiture funds were first used to pay plan expenses prior to them being used to reduce the employer contribution.  (DN 38, at PageID # 244.)  Plaintiff alleges Sypris violated ERISA §404(a)(1)(A) and 29 USC §1104(a)(1)(A); ERISA §404(a)(1)(B) and 29 U.S.C. §1104(a)(1)(B); and is liable for breaches of fiduciary duties by a co-fiduciary under ERISA §405(a)(2), 29 U.S.C. §1105(a)(2) and ERISA §405(a)(3) and 29 USC §1105(a)(3). (DN 38, at PageID #245.)

Plaintiff argues Defendant Sypris breached its fiduciary duties and engaged in prohibited transactions in violation of ERIA 29 USC §1001. (DN 46-1, at PageID #313.)  Plaintiff argues that Sypris had a duty to act for the exclusive purpose of providing benefits to plan participants but it violated that duty and 29 USC §1104(a)(1)(A) when it misdirected the forfeiture account funds to pay a portion of Sypris's employer matching contribution instead of plan expenses.  (DN 46-1, at

31

Page ID #334.)  Plaintiff also argues Sypris violated 29 USC §1106(a)(1)(D) since Sypris was a party in interest to the Plans under 29 USC §1002(3)(14)(A) and (C).  (DN 46-1, at PageID #335.) Plaintiff argues that as a result of using the forfeitures in a manner contrary to the Plan Documents, Sypris paid less for its employer matching obligation and plan participants paid plan expenses that should have been paid using the forfeitures.  (DN 46-1, at PageID #335.)  Plaintiff argues Defendant Sypris knew or should have known it was causing a party in interest to use and benefit from plan assets in violation of 29 USC §1106(a)(1)(D).  (DN 46-1, at PageID #335.)

Defendants oppose Plaintiff's motion for partial summary judgment and also seek summary judgment in their favor as to Count III.  Defendants contend that if the Court makes the legal determination that the Plan Administrator's interpretation was reasonable, then the use of forfeitures to reduce the matching contribution was not in conflict with the terms of the plan and the Secretary's claim for failure to monitor has no merit.  (DN 55, at PageID # 2510.)

Plaintiff opposes Defendants' motion for summary judgment on the basis that there is a genuine issue of material fact as to whether the Retirement Savings Plan Advisory Committee existed, despite the joint stipulation, and whether Sypris failed to properly monitor the Committee. (DN 50, at PageID # 2375.)  Plaintiff also argues that Defendants do not cite to any clear instances where Myers advised the Plan Administrator on the operation of the plan after the documents were signed.  (DN 50, at PageID # 2361, 2375.)  The parties tangentially argue about whether there is evidence that Sypris made oral representations to its employees about fixed matching contributions and whether matching contributions were discretionary or not.  (DN 49, at PageID # 2337; DN 54, at PageID # 2467.)  However, oral representations made to participants that their benefits would

be calculated other than as explicitly provided in the plan are not binding on the Defendants. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 402-403 (6th Cir. 1998).

The undersigned has already recommended finding that the evidence reflects that Defendants Wilson and Staron routinely discussed issues related to the administration of the Four Plans on behalf of Sypris with ERISA counsel Myers.  The undersigned has recommended that Defendants' exercise of discretion to interpret the Basic Plan provisions to allow the use of money in the forfeiture account to pay for matching contributions was not arbitrary and capricious and therefore any factual dispute about the discretionary nature of matching contributions and the oversight of a committee is immaterial.  Accordingly, the allegation that Sypris failed to monitor the Individual Defendants to ensure that the forfeiture funds were first used to pay plan expenses prior to them being used to reduce the employer contribution cannot be cannot be the basis for breach of fiduciary duty or engaging in prohibited transaction claims under ERISA.

Accordingly, the undersigned recommends that Defendants' motion for summary judgment as to Count III be GRANTED.  The undersigned also recommends that Plaintiff's motion for partial summary judgment as to Defendant Sypris Solutions Inc. be DENIED.

## H.  Count IV: Defendant Sypris Solutions Inc.

Plaintiff argues that Sypris was the Plan Administrator responsible for ensuring that the forfeitures were used in accordance with the four 401(k) plans' governing document.  (DN 46-1, at PageID # 325.)  Plaintiff argues that Sypris never formed the Retirement Savings Plan Advisory Committee and as a result Sypris is the default Plan Administrator and fiduciary.  (*Id.*; 29 U.S.C. §1102(16)(A)(ii).)  Plaintiff alleges that Sypris failed to ensure that the forfeitures were used to first pay plan expenses prior to using them to reduce employer contributions.  (DN 38, at PageID

#246.)  Accordingly, Plaintiff alleges that Sypris violated ERISA §404(a)(1)(A) and 29 USC §1104(a)(1)(A); ERISA §404(a)(1)(B) and 29 U.S.C. §1104(a)(1)(B); ERISA §404(a)(1)(D) and 29 U.S.C. §1104(a)(1)(D); ERISA §406(a)(1)(D) and 29 USC §1106(a)(1)(D); and ERISA §406(b)(2) and 29 USC §1106(b)(2).

Plaintiff argues that Defendants' use of the forfeiture account funds to reduce the amount Sypris had to pay for its declared employer matching obligation were prohibited transactions, in violation of 29 U.S.C. §1106(a)(1)(D).  (DN 46-1, at PageID # 323.)  Defendants argue that Sypris's use of forfeitures to reduce employer contributions before paying plan expenses was allowed and therefore, that there was no breach of fiduciary duty and no prohibited transaction. (DN 47, at PageID # 955.)

The undersigned has recommended finding that Defendants' exercise of discretion to interpret the Basic Plan provisions to allow the use of money in the forfeiture account to pay for matching contributions was not arbitrary and capricious. Accordingly, the allegation that Sypris failed to ensure that the forfeitures were used to first pay plan expenses prior to using them to reduce employer contributions cannot be the basis for breach of fiduciary duty or engaging in prohibited transaction claims under ERISA.

Accordingly, the undersigned recommends that Defendants' motion for summary judgment as to Count IV be GRANTED. The undersigned also recommends that Plaintiff's motion for partial summary judgment as to Defendant Sypris Solutions Inc. be DENIED.

I.   Count V: All Defendants

Plaintiff alleges that from January 1, 2012 until January 1, 2016 Defendants did not track forfeitures on a Plan-level basis such that Defendants did not ensure that forfeitures that came from

a particular plan were properly allocated pursuant to the governing documents.  (DN 38, at PageID # 248.)  Plaintiff alleges that the governing documents of the Four Plans had a default provision specifying that any contributions would be allocated to all Participants of the Employer, but Sypris overrode the default provision by checking the following:

> Check this box if contributions made by the Participating Employer signing this Participating Employer Adoption Page (and any forfeitures relating to such contributions) will be allocated only to Participants actually employed by the Participating Employer making the contribution. If this box is checked, Employees of the Participating Employer Adoption Page will not share in an allocation of contributions (or forfeitures relating to such contributions) made by the Employer or any other Participating Employer.

(DN 38, at PageID # 248.)  By failing to follow the above provision Plaintiff alleges Defendants violated ERISA §404(a)(1)(A) and 29 USC §1104(a)(1)(A); ERISA §404(a)(1)(B) and 29 U.S.C. §1104(a)(1)(B); and ERISA §404(a)(1)(D) and 29 U.S.C. §1104(a)(1)(D).  (DN 38, at PageID # 248.)

Plaintiff argues that once an ERISA plan is established, it is the Plan Administrator's duty to see that the plan is maintained pursuant to the written instrument.  *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) ("Contractual limitations provision should ordinarily be enforced as written is especially appropriate in the context of an ERISA plan.")  ERISA specifically obligates the plan administrator to act "in accordance with the documents and instruments governing the plan." *Kennedy v. Plan Adm'r for DuPont Sav. and Plan*, 555 U.S. 285, 300 (2009).

Plaintiff argues that according to Empower Retirement, the forfeitures were not tracked on a plan-level basis but instead were applied across all plans.  (DN 50-6.)  Plaintiff says that during

discovery Defendants neither admitted nor denied that forfeitures were tracked on a per-plan basis. (DN 50-7 at 14.)

Defendants argue that Count V does not identify harm to any of the participants in the Plan, therefore there cannot be a breach of a fiduciary obligation.  *Wsol v. Fiduciary Mgmt. Assocs., Inc.*, 266 F.3d 654, 656 (7th Cir. 2001) ("The plaintiffs cannot prevail unless the breach of fiduciary duty either imposed a loss on the plan or generated a profit for FMA through use of assets of the plan by FMA.")  The Court in *Wsol* stated, "if no misuse of the funds occurs, if no losses are incurred or profits obtained that differ from what they would have been had there been no breach of fiduciary duty, there is no remedy." *Id.* at 658.  Defendants argue that Plaintiff did not take any discovery on the issue of damages resulting from the alleged failure to properly track forfeitures and that Plaintiff has not identified harm to any of the participants either in his First Amended Complaint or Response.  (DN 55, at PageID #2511.)

Plaintiff argues there is harm caused to the participants of the Solutions Plan because the Plan Documents require that forfeitures be allocated only to participants of the Solutions Plan.  (DN 46-4, at PageID # 386.)  However, the undersigned finds that to be a circular and conclusory argument. Plaintiff bears the burden of proof as to damages from the alleged breach of fiduciary duty at trial. However, Plaintiff has not evidenced any damages specifically stemming from the alleged failure to correctly track forfeitures on a per-plan basis.  Accordingly, the undersigned recommends that Defendants' motion for summary judgment as to Count V be GRANTED.

## III.    RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED as follows:

(1) Defendants' motion for summary judgment be **GRANTED**.  (DN 47.)

36

(2) Plaintiff's motion for partial summary judgment be **DENIED**. (DN 46.)

May 13, 2020

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  Id.; United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981); see also Thomas v. Arn, 474 U.S. 140 (1985).

37