UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**Martin J. Walsh**                                                                                       Plaintiff
*Secretary of Labor,*
*U.S. Department of Labor*,

v.                                                                                        No. 3:17-cv-784-BJB

**Anthony C. Allen, et al.**,                                                              Defendants

\* \* \* \* \*

<u>Memorandum Opinion & Order</u>

The Secretary of Labor sued Sypris Solutions, Inc. and several of its employees for violating the terms of Sypris's retirement plans and breaching their fiduciary duties and other obligations under the Employee Retirement Income Security Act. First Amended Complaint (DN 38) ¶¶ 1, 29, 39, 45–48, 56–57, 64–65. The parties filed dueling motions for summary judgment, DNs 46 & 47, and the Court referred these motions to Magistrate Judge Lindsay for a report and recommendation under Federal Rule of Civil Procedure 72(b). DN 58 (citing 28 U.S.C. § 636(b)(1)(B)). His report recommended granting the defendants' motion for summary judgment and denying the Secretary's. DN 59 at 36–37.

The Secretary objected to Judge Lindsay's recommendations that (1) the forfeiture provisions are ambiguous; (2) the Plans gave the Administrator discretion to interpret those ambiguous provisions; and (3)–(4) the Court should review the Administrator's discretionary interpretation under an arbitrary-and-capricious standard of review. Objections (DN 60) at 2. After reviewing the recommendations and the Secretary's objections, the Court agrees with the Secretary that the forfeiture provisions are not ambiguous.

**I.     This Dispute**

The lawsuit concerns Sypris's use of "forfeitures" under the terms of its employee retirement plans. Forfeitures in this context are employer contributions to the 401(k) plans of employees who leave before their retirement benefits vest. R&R at 5. Failure to follow retirement-plan provisions regarding the treatment of forfeitures can amount to a breach of fiduciary duties under ERISA. *See* 29 U.S.C. § 1104(a)(1)(D).

The disputed provision appears in the "adoption agreement," a generic IRS-approved document that sets out options for employers like Sypris designing their retirement plans. The contract is modular, not bespoke—like ticking boxes on a sushi

1

menu, except ERISA governs your order. An employer uses this, plus a "Basic Plan Document," to select the features of its employees' retirement benefits.

This forfeiture section at issue contained three sets of options regarding their use:

> **ALLOCATION OF FORFEITURES**. Any forfeitures occurring during a Plan Year will be:
>
> ☐ (a) Reallocated as additional Employer Contributions or as additional Matching Contributions.
> ☐ (b) Used to reduce Employer and/or Matching Contributions.
>
> For purposes of this AA §8-8, forfeitures will be applied:
>
> ☐ (c) for the Plan Year in which the forfeiture occurs.
> ☐ (d) for the Plan Year **following** the Plan Year in which the forfeitures occur.
>
> Prior to applying forfeitures under this AA §8-8:
>
> ☐ (e) Forfeitures will be used to pay Plan expenses.
> ☐ (f) Forfeitures will not be used to pay Plan expenses.

R&R at 8. In 2008 and 2009, Sypris elected options (b), (c), and (e) for each of its four retirement plans. *See id.* at 5, 8.

After shifting from custom contracts to these pre-approved "volume submitter" plans, Sypris used the forfeitures from the accounts associated with departed employees to offset the matching contributions Sypris had pledged to the accounts of remaining employees. *Id.* at 4–5. And rather than the company paying the plans' expenses, Sypris deducted the expenses from the participants' accounts. Joint Stipulations (DN 46-3) ¶ 12. This much is undisputed.

But the parties disagree on the correct interpretation of option (e). *See* R&R at 13–15 (summarizing parties' positions). The Secretary argues that "will" is a mandatory commitment, while the defendants contend it is permissive—at least when read alongside neighboring provisions.

## II. Standard of Review

The Court reviews de novo the portions of the recommendation that the Secretary objected to. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Defendants, however, argue that the Court may disregard the objections entirely because they "d[o] nothing more than state a disagreement … or simply summariz[e] what has

2

been presented before." *See* Response to Objections (DN 61) at 5 (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)).

To be sure, a "general objection to the entirety of the magistrate's report," which does not identify "specific issues for review," would have "the same effects as … a failure to object." *Howard v. Sec. of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Such a blunderbuss objection would simply repeat the exercise already undertaken by the magistrate judge and fail to narrow the areas of disagreement on review. That "duplication of time and effort wastes judicial resources … and runs contrary to the purposes of the Magistrates Act." *Id.*

But the Secretary's objections here *do* inform the Court "what [he] thought the magistrate had done wrong"—that is, misinterpreting the forfeiture provision as discretionary rather than mandatory. *Id.* at 508. The objections do not present the same problems as the "stock objection form" examined in *Howard* and relied on by the defendants. *Id.* They do not "simply summariz[e] what has been presented before." *VanDiver*, 304 F. Supp. 2d at 937. Subsequent courts have applied *VanDiver*'s rule narrowly to reach only objections that fail to add *anything* to prior submissions for the district court's consideration, and have treated even a single new citation as a valid objection meriting review. *See, e.g.*, *Jackson v. Litteral*, No. 3:16-cv-91, 2017 WL 5148358, at *5 (W.D. Ky. Nov. 6, 2017) (rejecting most of a largely repetitive objection, but considering afresh a citation that the plaintiff included in the objection but not the underlying brief). To be sure, the Secretary's objections raise similar arguments as his motion for summary judgment. But those arguments are tailored to the magistrate judge's rejection of his position, which he has a right to challenge before the district judge. The defendants point to no caselaw indicating that pressing an argument similar to that rejected in an R&R would render an objection improper. Indeed, the converse position advocated by the defendants would raise serious concerns regarding forfeiture. *See generally United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981) ("a party shall file objections with the district court or else waive right to appeal").

The defendants raise an additional argument regarding the standard of review: de novo review by this Court is not appropriate when "the only issues raised by petitioner are legal ones." Response at 3 (citing *Mira v. Marshall*, 806 F.2d 636, 636–37 (6th Cir. 1986)). In *Mira*, a habeas petitioner argued that the district court erred in adopting the magistrate judge's recommendations without de novo review. 806 F.2d at 637. There the petitioner offered a blanket objection: "The undersigned objects to each and every finding of the Magistrate and requests that the court conduct a *de novo* review of the record." *Id.* The district court declined, due to petitioner's failure to raise any new issues beyond those already addressed by the magistrate judge. *Id.* The Sixth Circuit agreed: "de novo review" is only required for "those portions of a magistrate's report or recommendations to which objections have been made," and even then only when the objections are not "frivolous, conclusive or general." *Id.* (quotation marks omitted). The Sixth Circuit proceeded to offer an

3

alternative basis for affirmance that includes the language the defendants seize on here. The per curiam opinion stated that "the only issues raised by petitioner are legal ones," while "'de novo determination refers only to matters involving disputed facts.'" *Id.* at 637–38 (quoting *Gioiosa v. United States*, 684 F.2d 176, 179 (1st Cir. 1982)). This meant the "petitioner was not harmed by the District Court's failure to grant *de novo* review." *Id.* at 638.

The parties here don't point to any subsequent authority within this Circuit indicating that de novo review would (counterintuitively) be limited to factual rather than legal issues. Indeed, the Sixth Circuit has remanded a district court's opinion for failing to conduct de novo review of the legal conclusions of the magistrate judge. *United States v. Quinney*, 238 F. App'x 150, 153 (6th Cir. 2007). On closer examination, moreover, the single out-of-circuit precedent the *Mira* panel quoted addressed the scope and availability of a de novo evidentiary *hearing* by a district court sitting in habeas, not any limitation on a district court's review of a question of law decided by a magistrate judge and subject to a proper objection before the district court. *See Mira*, 806 F.2d at 638 (quoting *Gioiosa*, 684 F.2d at 179). *Mira* surely could not stand for the broad proposition defendants suggest: that a district judge could or should categorically avoid de novo review of objections to legal conclusions. Such a rule would, at a minimum, sit in considerable tension with the text of 28 U.S.C. § 636(b)(1)(C), which does not distinguish between disputed factual and legal rulings, and which expressly calls for de novo district-court "determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Federal Rule of Civil Procedure 72(b)(3) likewise calls for de novo review of "any part" of the recommendation. And Rule 72(a), which embraces an even more deferential standard of review for non-dispositive motions, requires district courts to "set aside" decisions that are "contrary to law." Why would objections to purported errors of law contained in dispositive motions receive less review? Defendants do not say.

As requested by the Secretary, therefore, the Court reviews the objected-to portions of the R&R de novo.

### III.   Ambiguity

The Secretary objected that Judge Lindsay "rel[ied] on the competing interpretations of the forfeiture provisions … rather than giving effect to the[ir] plain meaning." Objections at 9. So-called "federal common law" governs the interpretation of ERISA plan documents. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) ("Because the Plan is governed by ERISA, we apply federal common law rules of contract interpretation in making our determination. In developing federal common law rules of contract interpretation, we take direction from both state law and general contract law principles." (citations omitted)). And "general principles of contract law dictate that we interpret the provisions according to their plain meaning in an ordinary and popular sense." *Williams v. Int'l Paper Co.*,

4

227 F.3d 706, 711 (6th Cir. 2000). Any ambiguity must be "apparent on the face of the contract"; courts "may not use extrinsic evidence to create an ambiguity." *United States v. Donovan*, 348 F.3d 509, 512 (6th Cir. 2003) (quotation omitted). Certainly "[t]he mere fact that parties propose competing interpretations of language in a Plan 'does not dictate a finding that the provision is ambiguous.'" *Adams v. Anheuser-Busch Cos.*, 758 F.3d 743, 748 (6th Cir. 2014) (quoting *Shelby County Health Care Corp. v. The Majestic Star Casino LLC Grp. Health Benefit Plan*, 581 F.3d 355, 370 (6th Cir. 2009)).

In light of Sypris's election, the disputed provision reads: "Prior to applying forfeitures under this AA § 8-8: Forfeitures will be used to pay Plan expenses." R&R at 8. The plain meaning of "will" in this section is "must." Courts recognize that "words like 'will' and 'must' are generally of mandatory effect." *See Kelly v. United States*, 924 F.2d 355, 360 (1st Cir. 1991) (conceding that they "may have other meanings and may be used … in merely a directory sense" if circumstances indicate otherwise); *Summit Packaging Sys., Inc. v. Kenyon & Kenyon*, 273 F.3d 9, 12 (1st Cir. 2001) ("[T]he plain meaning of the phrase "will be submitted" is that the course of action is required, not discretionary."); *Prudden v. E.J. Brach Corp.*, 946 F. Supp. 572, 578 (N.D. Ill. 1996) ("the CBA's language is mandatory, not permissive. Prudden's claim for breach is one that 'shall' be considered a grievance, which Brach and the Union 'will' cooperate to settle."). This accords with dictionary definitions, which indicate that "will" primarily connotes a mandatory rather than permissive effect. *See, e.g.*, WEBSTER'S NEW INTERNATIONAL DICTIONARY at 2928 (2d ed. 1934; 1945) (listing the first non-archaic use of the verb form as "To enjoin or command; to direct; order."); RANDOM HOUSE UNABRIDGED DICTIONARY at 2175 (2d ed. 1993) (listing "am … expected or required to" before "may be expected or supposed to").

The word's usage and context in this document confirm that interpretation. If sponsors commit that "Forfeitures will be used to pay Plan expenses," then the forfeitures *must* be used to pay Plan expenses. "Will" appears three times in this short section, once in each of the three elections. *See* R&R at 8. Each election presents the employer with two mutually exclusive options. Reading "will" as permissive rather than mandatory drains these contractual elections of their utility by collapsing the distinction between these options. If electing option (c) merely gives the employer *discretion* to use forfeitures "for the Plan Year in which the forfeiture occurs," for example, then the employer would retain the option to take precisely the course it failed to select: using the forfeitures "for the Plan Year **following** the Plan Year in which the forfeitures occur" (option (d)). *Id.* Courts generally avoid interpreting provisions of an agreement to be meaningless, which the defendants' approach appears to do. *See Johnson Controls, Inc. v. City of Cedar Rapids*, 713 F.2d 370, 374 (8th Cir. 1983) ("[A]n elementary rule of contract interpretation is that a contract should be construed so as to give effect to all the contract's provisions.").

The introductory clause to option (e) also supports the Secretary's interpretation. It states that forfeitures will be used to pay plan expenses "[p]rior to

5

applying forfeitures under this AA § 8-8." R&R at 8. What would be the purpose of sequencing these uses if the employer retained discretion to do either? Why have a forfeiture provision at all, if the employer still can do whatever it wants with these sums?

But reading "will" as mandatory, defendants argue, conflicts with other uses of that term in the plan documents. Section 11.05(b) states the "Plan Administrator *will* allocate plan expenses among the accounts of Plan Participants." Response at 9; R&R at 7–8 (emphasis added). According to the defendants, reading "will" as mandatory in § 11.05(b) and § 8-8(e) would be internally inconsistent: Sypris would need to use forfeitures for expenses, as ostensibly required by § 8-8(e), *and* "allocate plan expenses among the accounts of Plan Participants," as required by § 11.05(b). Response at 9.

Courts, however, avoid "interpret[ing] any provision so as to create a conflict with other provisions of the contract." *Sigmon Coal Co., Inc. v. Tenn. Valley Auth.*, 359 F. Supp. 2d 686, 691 (E.D. Tenn. 2004). And the Secretary's interpretation avoids any alleged conflict between sections 11.05(b) and 8-8(e) here. First of all, the amount of forfeitures might not cover all plan expenses, in which case the plan would pay in part using forfeitures under § 8-8 and pay the balance using plan assets under § 11.05(b).

And even if plan expenses didn't exceed forfeitures, defendants' purported inconsistency would still dissolve for a second reason. "Plan assets" include both forfeitures *and* participant accounts. Section 11.05(a), which precedes § 11.05(b), provides that "[a]ll reasonable expenses related to plan administration *will* be paid from Plan assets." R&R at 7–8 (quoting Basic Plan Document (DN 47-3) at PageID # 1080) (emphasis added). Defendants imply that only participant accounts can amount to plan assets. Not so. Under 29 C.F.R. § 2510.3-102(a)(1), courts generally recognize that employer contributions become "plan assets" when paid into the plan, as the forfeited amounts were. *See Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000) ("Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets …"). This is the meaning and effect of the Plan provisions at issue in Sypris's agreements, even though the statute and interpreting regulations do not explicitly define forfeitures as "plan assets." *See* 29 U.S.C. § 1002(42). So using forfeitures to pay plan expenses under § 8-8 is consistent with § 11.05's command that administrators pay expenses with plan assets. Section 11.05(b) simply says the administrator must allocate; sections 11.05(a) and 8-8(e) tell her *what* to allocate.

The defendants' interpretation fails for another reason: it would render the plan documents' distinction between "may" and "will" meaningless. As noted above, courts have recognized that the meaning of "will" depends on context. *See Kelly*, 924 F.2d at 360. Elsewhere, the plan documents use "may" in a distinct way to indicate permissive language. Section 7.11 (emphases added) states:

6

> The Employer *may* elect in AA § 8-8 how it wishes to allocate forfeitures under the Plan. Forfeitures *may* be used in the Plan Year in which the forfeitures occur or in the Plan Year following the Plan Year in which the forfeitures occur. In applying the forfeiture provisions under the Plan, if there are any unused forfeitures as of the end of the Plan Year designed in AA §8-8(c) or (d), as applicable, any remaining forfeiture *will* be used (as designated in AA §8-8) in the immediately following Plan Year….

This describes the choices available to Sypris before—not after—it designed its Adoption Agreement. The plan consistently uses "may" where employers have a choice and "will" when only one option exists. *See, e.g., GPIF-I Equity Co. v. HDG Mansur Inv. Servs., Inc.*, No. 13 cv 547, 2013 WL 3989041, at *3 (S.D.N.Y. Aug. 1, 2013) (different words should be given different meanings in a contract). And the discerning uses of these words—in the very section that explains how the § 8-8 election works—suggests that "will" continues to have mandatory effect in that section. So Sypris exercised its discretion by choosing option (e), and cannot now avoid those clear terms by reading discretion back into "will."

Given this straightforward and less problematic reading of the contractual language, the Court concludes the forfeiture provisions were not ambiguous. This interpretation necessarily rejects the recommended dispositions regarding objections (2)–(4), which rested on a presumption that the contractual provision was ambiguous and therefore subject to reasonable interpretation by the Administrator. *See* R&R at 17.

## ORDER

The Court sustains the Secretary's first objection (DN 60 at 8–14). Because the subsequent objections address recommendations that, at least to some extent, turn on that first question, this order moots those subsequent objections. In the interest of efficiency, the Court would like to hold a hearing to clarify the parties' positions on those remaining issues. This includes the Secretary's theory of harm for counts I through IV, the status of specific defendants as fiduciaries, and whether their actions breached fiduciary duties under ERISA.

The Court schedules a telephonic hearing on these questions for February 22, 2022 at 1:30 p.m. If counsel need to reschedule in order to avoid a conflict, they should confer and propose at least two mutually agreeable windows.