## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**JULIE A. SU**    **PLAINTIFF**
*ACTING U.S. SECRETARY OF LABOR*

v.    No. 3:17-cv-784-BJB

**ANTHONY C. ALLEN, ET AL.**    **DEFENDANTS**

\* \* \* \* \*

### MEMORANDUM OPINION

The United States Department of Labor filed this lawsuit against Sypris Solutions, several members of Sypris's retirement savings plan advisory committee, and the Sypris 401(k) Merged Retirement Savings Plan. The suit alleged that Sypris mishandled "forfeitures" (unvested employer contributions) under several retirement savings plans. Since the suit began back in 2017, seasoned counsel have litigated this case through discovery, mediation, and multiple rounds of summary judgment briefing. After the Court denied summary judgment, the parties submitted a joint proposed consent order and judgment against Sypris only. The agreed judgment would require Sypris to allocate $575,000 to the retirement accounts of "affected participants" and pay a $57,500 penalty.[1] Consent Order (DN 87) at 2–3, 5. Once judgment is entered, the Secretary will dismiss all claims against the individual defendants. Joint Supplemental Brief (DN 93) at 3.

**A.** Before entering such an agreed judgment a court must determine whether it's "fair, adequate, and reasonable, as well as consistent with the public interest." *United States v. Lexington-Fayette Urban County Gov't*, 591 F.3d 484, 490 (6th Cir. 2010) (quotation marks omitted). That's because a "consent decree [or judgment[2]] is essentially a settlement agreement subject to continued judicial policing" that "puts the power and prestige of the court behind the compromise struck by the parties." *Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 871 (6th Cir. 2015) (quoting

---

[1] The proposed judgment envisions that the Secretary might grant a "good faith" waiver of the penalty. Consent Order at 5–6.

[2] "Although 'decrees' formerly described only those orders issued from courts of equity while 'judgments' were those orders rendered by courts of law, the merger of equity and law has blurred this distinction." Judith Resnik, *Judging Consent*, 1987 U. Chicago Legal Forum 43, 45 (cited with approval in *Montez v. Hickenlooper*, 640 F.3d 1126, 1131 n.1 (10th Cir. 2011)) (noting "that the terms 'consent judgment' and 'consent decree' are generally used interchangeably.").

*Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). So courts account for "the strength of the plaintiffs' case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not approved." *Lexington-Fayette*, 591 F.3d at 489 (cleaned up).

The consent judgment proposed by the parties is fair, reasonable, and adequate from the perspectives of the Secretary and defendants who have negotiated it. This was a complex and hard-fought case that involved extensive discovery and multiple rounds of briefing. The terms of the proposed consent judgment appear to result from "a hard-fought compromise" and account for the relative strength of the parties' positions. Joint Supp. Br. at 4; *see also* DN 67 at 5–7 (sustaining Secretary's objections to R&R); DN 69 (denying cross-motions for summary judgment based in part on unresolved questions about Sypris's alleged reliance on outside advisors). The consent judgment resolves all outstanding issues in this case, provides real relief to plan participants affected by Sypris's conduct, and furthers ERISA's purpose by "mak[ing] the benefits promised by an employer more secure[.]" *See Rutledge v. Pharmaceutical Care Mgmt. Ass'n*, 141 S. Ct. 474, 480 (2020) (quotation marks omitted); *see also United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991) (considering the nature of the violations, "the degree to which the remedy will adequately address the" violations, and "the extent to which the decree furthers the goals of the statute"). It also furthers the law's "presumption in favor of voluntary settlement of litigation." *Lexington-Fayette*, 591 F.3d at 490 (quotation marks omitted).

As to the "public interest," *id.*, the parties urge the Court to defer to the Secretary's assessment, Joint Supplemental Brief at 6–7 (citing *Acosta v. Agave Elmwood Inc.*, No. 1:17-cv-605, 2018 WL 5519540, at *3 (W.D.N.Y. Oct. 29, 2018)). True, the position of the ERISA enforcement agency merits significant consideration in assessing a concept as amorphous as the "public interest." The presumption in favor of judicial approval is "particularly strong where a consent decree has been negotiated" by or on behalf of a federal administrative agency with substantial expertise in its field. *Akzo Coatings*, 949 F.2d at 1436. The Secretary's position, after all, accounts for "substantial expertise" and accountability that judges lack. *Lexington-Fayette*, 591 F.3d at 490–91.

Nevertheless, the courts of appeals have tasked district judges with exercising their own independent—if deferential—judgment. Trial judges must consider whether a consent decree furthers not only the sometimes narrow interests of the parties, but also the broader interests of the public. *See Williams*, 720 F.2d at 920 ("Judicial approval … may not be obtained for an agreement which is … contrary to the public interest."). Here, the Court would reach the same conclusion as the Secretary no matter the level of deference afforded: the agreed resolution serves the public interest by deterring violations of ERISA, carrying out Congress' instruction

that plan sponsors should carry out their fiduciary duties in accordance with governing plan documents, providing both public and private remedies, and avoiding the added delay and expense of a trial. *See Lexington-Fayette*, 591 F.3d at 490 ("In evaluating the public interest, the district court must consider whether the decree is consistent with the public objectives sought to be attained by Congress." (quotation marks omitted)).

**B.** The closer question is whether any non-party is "affected" by the consent judgment and therefore entitled to notice and an opportunity to object to the resolution. *Pedreira*, 802 F.3d at 872. A consent judgment may "implicate the rights of third parties" beyond those who are parties to the litigation. *E.g.*, *326 Land Co., LLC v. Traverse City*, No. 1:22-cv-45, 2023 WL 3033175, *5 (W.D. Mich. Apr. 21, 2023). So courts, before deciding whether to approve a consent judgment, "must allow anyone affected by the [judgment] to present evidence and have its objections heard." *Pedreira*, 802 F.3d at 872 (cleaned up); *see also Williams*, 720 F.2d at 921 ("Notice should be given to all individuals who may be affected by the decree."). Courts may satisfy this obligation by holding a "fairness hearing" (which does not require "the entire panoply of protections afforded by a full-blown trial on the merits"). *Tenn. Ass'n of Health Maint. Orgs. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001).

Who are the "affected" persons here? The answer to that question is complicated by the terminology used in the proposed consent judgment. It describes the subset of plan participants who will receive reimbursement as "[a]ffected participants"—"those participants who," after initial pro rata calculations, "are entitled to an allocation of the Preliminary Restoration Payment equal to or greater than" $250. Consent Order at 3. To avoid the administrative costs of reallocating amounts the parties treat as de minimis, plan participants whose payment would fall *below* $250 are not entitled to anything. The judgment doesn't define them as "affected participants," and—to salt the wound—actually reallocates their restoration payments (forfeited funds the Secretary says should've gone into their accounts) to the "affected participants" due more than $250. *Id.*

So both subsets of plan participants are "affected" by the settlement in one sense—they either receive a retirement allocation from the company or miss out on the opportunity for a (small) boost based on the settlement's de minimis threshold. Yet neither group—whether deemed "affected" or not—has received notice or an opportunity to object. This linguistic tension between the Secretary's and the caselaw's use of "affected" revealed an important question the parties' proposed judgment hadn't addressed: whether some or all participants in the Sypris plan deserved notice and an opportunity to object to the settlement. The Court scheduled a hearing (DN 88) and requested supplemental briefing (DN 92) to determine whether a fairness hearing was required.

3

The Secretary and Defendants made their position regarding notice to Sypris's plan participants crystal clear:

> [T]he proposed [consent judgment] does not contemplate notice to non-parties and an opportunity to object, [and] no such notice and opportunity is legally required nor would it be beneficial in this case…. The inquiry into whether the consent decree is fair, adequate, reasonable, and in the public interest does not necessitate providing affected nonparties notice of the decree and an opportunity to object. Nor would it be beneficial for the parties to undertake to provide such notice to nonparties given the posture of the case and particular circumstances presented here."

Joint Supplemental Brief at 1–3.

The most relevant Sixth Circuit precedent, however, refers to "anyone affected by the decree" rather than simply "nonparties." *Compare id.* at 8–10, *with Pedreira*, 802 F.3d at 872. The parties haven't pointed to caselaw clearly delineating the outer bounds of "anyone affected" or equating the term to "nonparties."[3] At least one district court within this circuit, reviewing a consent decree for its consistency with the "public interest," recently implied that the right to object might extend more broadly. *See 326 Land Co.*, 2023 WL 3033175, at *13 (rejecting consent decree, in part, because "the public should be afforded an opportunity to weigh in on the proposed agreement"). But no court appears to have afforded the term its maximal reach by affording notice and a hearing to anyone and everyone who might feel some practical effect of a judgment. *Cf. Mote v City of Chelsea*, 252 F. Supp. 3d 642, 657 (E.D. Mich. 2017) (denying named defendant a fairness hearing because "the decree [did not] necessarily … foreclose the rights of [the objecting party]"). Such a reading could raise nontrivial Article III concerns; opening the courthouse doors to anyone who perceives some practical effect to a consent judgment could invite all manner of non-parties to the proceedings (and therefore the settlement table as well) even though they lacked a connection to the underlying case or controversy. Regardless of

---

[3] The parties cite a number of opinions from courts within the Second Circuit to argue that only "participants in th[e] proceeding" have a right to fairness hearings. Joint Supp. Br. at 7. These opinions, however, address the Second Circuit's public-interest analysis—not the fairness-hearing question. *See, e.g.*, *SEC v. Caledonian*, 317 F.R.D. 358, 374 (S.D.N.Y. 2016) (district court should not second-guess agency's public interest determination unless "participants in this proceeding … set forth a legitimate basis for concluding that the consent decree would harm the public or bar private litigants from pursuing their own claims") (cleaned up) (quoting *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 297 (2d Cir. 2014)); *see also Acosta v. Bratcher*, 343 F. Supp. 3d 108, 113–14 (W.D.N.Y. 2018) (consent decree in public interest because no defendant argued it wasn't); *Agave Elmwood*, 2018 WL 5519540, at *3 (same).

4

where the line has been or should be drawn, the Court agrees that the plan participants defined (infelicitously) as "affected participants" under this consent judgment aren't entitled to notice and a hearing.

As the parties concede, the public relief secured by the Secretary won't bind anyone aside from the Secretary and Sypris. Joint Supplemental Brief at 8 ("[T]he proposed Consent Order and Judgment does not bar private litigants, such as plan participants, from pursuing their own claims."). This means that the judgment won't extinguish any plan participant's contractual right to benefits under the plan or legal right to sue Sypris in a separate suit.[4] Judgment in a class action, by contrast, *would* bind the affected party. *See* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members *who would be bound*" by a proposed classwide settlement.) (emphasis added). Nor will the consent judgment here deprive plan participants (whether or not they recover under the judgment) of any property interest; plan participants have no property interest in or other right to control the amount of recovery they might receive through a public-enforcement action that an agency decides to pursue. *See, e.g. McCasland v. City of Castroville*, 514 F. App'x 446, 449 (5th Cir. 2013) (absent statutory or regulatory language to the contrary, a third party's "indirect or incidental benefi[t]" from an administrative enforcement action "does not vest property interests in [benefiting] third parties"); *Miller v. Town of Wenham*, 833 F.3d 46, 54 (1st Cir. 2016) ("It is unrealistic to deem each of those decisions not to pursue enforcement action to be a potential deprivation of a property interest for which prior notice need be given.").

Because the judgment won't affect any plan participant's legal or property rights, the participants are not "affected" by the judgment in the sense contemplated by the Sixth Circuit's decision in *Pedreira*. There the relevant party (Sunrise) was a non-settling party that was the subject of "the complaint's allegations of wrongdoing," "sought a merits adjudication" from the court, and was "single[d] out … by name for special monitoring." 802 F.3d at 872.[5] "A decree that did not, directly or indirectly, single out Sunrise in this manner would stand on different ground than the decree as it comes to us here." *Id.* at 872. And *Grier*—cited in *Pedreira*—involved an intervening party entitled to a fairness hearing based on interests directly compromised by the consent decree. 262 F.3d at 563, 567. *Cf. Reynolds v. Roberts*, 251 F.3d 1350, 1356 n. 12 (11th Cir. 2001) (entry of consent decree "requires the

---

[4] While important to the scope of and justification for the consent judgment, the right to file a separate lawsuit is in some sense academic, given that the statute of limitations appears to have long since run on any private claims regarding ERISA violations.

[5] In addressing the related but distinct question whether Sunrise had standing to appeal, the Sixth Circuit held it was "aggrieved" by the "consent decree" because it imposed "some detriment" on Sunrise. 802 F.3d at 869.

consent of all parties whose legal rights would be *adversely* affected by the decree") (emphasis added). The absent Sypris plan participants, by contrast, are not parties to the lawsuit, nor "formally bound" by the consent judgment, nor deprived of any contractual rights or property interests as a result of it. *Id.*

So the Court agrees that those legally affected by the consent judgment have had an opportunity to object—and those whose legal rights are not affected are not entitled to one. The judgment "affect[s]" the legal rights of Sypris, the Government, and the named defendants—none of whom have objected. Some plan participants will receive a benefit from the order, while some will not. But none will be legally any *worse* off than they would've been absent this lawsuit and its resolution. (Whether a non-party entitled to some benefit as a result of a consent judgment could later complain about the judgment's implementation is a separate question.) But to approve and enter the judgment in the first place, the Court needn't hold a fairness hearing to provide non-parties with notice and an opportunity to object and present evidence.

## ORDER

The Court approves and enters the proposed Consent Order and Judgment (DN 87) as fair, reasonable, adequate, and consistent with the public interest.

Benjamin Beaton, District Judge
United States District Court

September 28, 2023